UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Ft. Pierce Division

**Case Number: 10-14096-CR-MARTINEZ**

UNITED STATES OF AMERICA,

vs.

RAVINDRANAUTH ROOPNARINE,

     Defendant.

_____/

## COURT'S INSTRUCTIONS
## TO THE JURY

Members of the Jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case. After I've completed these instructions, you will go to the jury room and begin your discussions – what we call your deliberations.

You must decide whether the Government has proved the specific facts necessary to find the Defendant guilty beyond a reasonable doubt.

Your decision must be based only on the evidence presented during the trial. You must not be influenced in any way by either sympathy for or prejudice against the Defendant or the Government.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the Court's instructions on the law.

The indictment or formal charge against a Defendant isn't evidence of guilt. The law presumes every Defendant is innocent. The Defendant does not have to prove his innocence or produce any evidence at all. A Defendant does not have to testify, and if the Defendant chose not to testify, you cannot consider that in any way while making your decision. The Government must prove guilt beyond a reasonable doubt. If it fails to do so, you must find the Defendant not guilty.

The Government's burden of proof is heavy, but it doesn't have to prove a Defendant's guilt beyond all <u>possible</u> doubt. The Government's proof only has to exclude any "reasonable doubt" concerning the Defendant's guilt.

A "reasonable doubt" is a real doubt, based on your reason and common sense after you've carefully and impartially considered all the evidence in the case.

"Proof beyond a reasonable doubt" is proof so convincing that you would be willing to rely and act on it without hesitation in the most important of your own affairs. If you are convinced that the Defendant has been proved guilty beyond a reasonable doubt, say so. If you are not convinced, say so.

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

-4-

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

- Did the witness impress you as one who was telling the truth?

- Did the witness have any particular reason not to tell the truth?

- Did the witness have a personal interest in the outcome of the case?

- Did the witness seem to have a good memory?

- Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

- Did the witness appear to understand the questions clearly and answer them directly?

- Did the witness's testimony differ from other testimony or other evidence?

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

To decide whether you believe a witness, you may consider the fact that the witness has been convicted of a felony or a crime involving dishonesty or a false statement.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

You must consider some witnesses' testimony with more caution than others.

In this case, the Government has made a plea agreement with a Codefendant in exchange for his or her testimony. Such "plea bargaining," as it's called, provides for the possibility of a lesser sentence than the Codefendant would normally face. Plea bargaining is lawful and proper, and the rules of this court expressly provide for it.

But a witness who hopes to gain more favorable treatment may have a reason to make a false statement in order to strike a good bargain with the Government.

So while a witness of that kind may be entirely truthful when testifying, you should consider that testimony with more caution than the testimony of other witnesses.

And the fact that a witness has pleaded guilty to an offense isn't evidence of the guilt of any other person.

The indictment charges three separate crimes, called "counts," against the Defendant. Each count has a number. You'll be given a copy of the indictment to refer to during your deliberations.

Count One charges that the Defendant knowingly and willfully conspired to commit wire fraud and mail fraud, in order to unlawfully enrich himself by, among other things, recruiting straw borrowers; submitting false loan applications; concealing the submission of the false loan applications and the transfer of fraud proceeds; and diverting fraud proceeds for his personal use and benefit, and to further the fraud scheme.

Counts Three and Six charge that Defendant committed what are called "substantive offenses," specifically wire fraud and mail fraud. I will explain the law governing those substantive offenses in a moment.

But first note that the Defendant is not charged in Count One with committing a substantive offense – he is charged with conspiring to commit that offense.

I will also give you specific instructions on conspiracy.

-8-

It's a Federal crime to knowingly and willfully conspire or agree with someone to do something that, if actually carried out, would result in the crimes of wire fraud or mail fraud.

A "conspiracy" is an agreement by two or more persons to commit an unlawful act. In other words, it is a kind of partnership for criminal purposes. Every member of the conspiracy becomes the agent or partner of every other member.

The Government does not have to prove that all the people named in the indictment were members of the plan, <u>or</u> that those who <u>were</u> members made any kind of formal agreement. The heart of a conspiracy is the making of the unlawful plan itself, so the Government does not have to prove that the conspirators succeeded in carrying out the plan.

The Defendant can be found guilty of this conspiracy offense only if all the following facts are proved beyond a reasonable doubt:

(1)     two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit wire fraud or mail fraud, as charged in the indictment; and

(2)     the Defendant knew the unlawful purpose of the plan and willfully joined in it.

A person may be a conspirator even without knowing all the details of the unlawful plan or the names and identities of all of the other alleged conspirators.

If the Defendant played only a minor part in the plan but had a general

understanding of the unlawful purpose of the plan – and willfully joined in the plan on at least one occasion – that's sufficient for you to find the Defendant guilty.

But simply being present at the scene of an event or merely associating with certain people and discussing common goals and interests doesn't establish proof of a conspiracy. Also, a person who doesn't know about a conspiracy but happens to act in a way that advances some purpose of one doesn't automatically become a conspirator.

It's a Federal crime to use interstate wire, radio, or television communications to carry out a scheme to defraud someone else.

The Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:

(1)   the Defendant knowingly devised or participated in a scheme to defraud, or to obtain money or property by using false pretenses, representations, or promises;

(2)   the false pretenses, representations, or promises were about a material fact;

(3)   the Defendant acted with the intent to defraud; and

(4)   the Defendant transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud.

The term "scheme to defraud" includes any plan or course of action intended to deceive or cheat someone out of money or property by using false or fraudulent pretenses, representations, or promises.

A statement or representation is "false" or "fraudulent" if it is about a material fact that the speaker knows is untrue or makes with reckless indifference to the truth, and makes with the intent to defraud. A statement or representation may be "false" or "fraudulent" when it is a half-truth, or effectively conceals a material fact, and is made with the intent to defraud.

A "material fact" is an important fact that a reasonable person would use to decide whether to do or not do something. A fact is "material" if it has the capacity

or natural tendency to influence a person's decision. It doesn't matter whether the decision-maker actually relied on the statement or knew or should have known that the statement was false.

The "intent to defraud" is the specific intent to deceive or cheat someone, usually for personal financial gain or to cause financial loss to someone else.

The Government does not have to prove all the details alleged in the indictment about the precise nature and purpose of the scheme. It also doesn't have to prove that the material transmitted by interstate wire was itself false or fraudulent; or that using the wire was intended as the specific or exclusive means of carrying out the alleged fraud; or that the Defendant personally made the transmission over the wire. And it doesn't have to prove that the alleged scheme actually succeeded in defrauding anyone.

To "use" interstate wire communications is to act so that something would normally be sent through wire, radio, or television communications in the normal course of business.

Each separate use of the interstate wire communications as part of the scheme to defraud is a separate crime.

It's a Federal crime to use the United States mail, or to transmit something by private or commercial interstate carrier, in carrying out a scheme to defraud someone.

The Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:

(1) the Defendant knowingly devised or participated in a scheme to defraud someone, or obtain money or property, using false or fraudulent pretenses, representations, or promises;

(2) the false or fraudulent pretenses, representations, or promises were about a material fact;

(3) the Defendant intended to defraud someone; and

(4) the Defendant used the United States Postal Service by mailing or by causing to be mailed, or a private or commercial interstate carrier by depositing or causing to be deposited with the carrier, something meant to help carry out the scheme to defraud.

A "private or commercial interstate carrier" includes any business that transmits, carries, or delivers items from one state to another. It doesn't matter whether the message or item actually moves from one state to another as long as the message or item is delivered to the carrier.

A "scheme to defraud" includes any plan or course of action intended to deceive or cheat someone out of money or property using false or fraudulent pretenses, representations, or promises.

A statement or representation is "false" or "fraudulent" if it is about a

material fact, it is made with intent to defraud, and the speaker either knows it is untrue or makes it with reckless indifference to the truth. It may be false or fraudulent if it is made with the intent to defraud and is a half-truth or effectively conceals a material fact.

A "material fact" is an important fact that a reasonable person would use to decide whether to do or not do something. A fact is "material" if it has the capacity or natural tendency to influence a person's decision. It doesn't matter whether the decision-maker actually relied on the statement or knew or should have known that the statement was false.

To act with "intent to defraud" means to act knowingly and with the specific intent to deceive or cheat someone, usually for personal financial gain or to cause financial loss to someone else.

The Government does not have to prove all the details about the precise nature and purpose of the scheme or that the material mailed or deposited with an interstate carrier was itself false or fraudulent. It also does not have to prove that the use of the mail or the interstate carrier was intended as the specific or exclusive means of carrying out the fraud, or that the Defendant did the actual mailing or depositing. It doesn't even have to prove that anyone was actually defrauded.

To "cause" the mail or an interstate carrier to be used is to do an act knowing that the use of the mail or the carrier will usually follow in the ordinary

-14-

course of business or where that use can reasonably be foreseen.

Each separate use of the mail or an interstate carrier as part of the scheme to defraud is a separate crime.

During a conspiracy, if a conspirator commits a crime to advance the conspiracy toward its goals, then in some cases a coconspirator may be guilty of the crime even though the coconspirator did not participate directly in the crime.

So regarding Counts 3 and 6, if you have first found the Defendant guilty of Count 1, you may also find that Defendant guilty of any of the crimes charged in Counts 3 and 6 even though the Defendant did not personally participate in the crime. To do so, you must find beyond a reasonable doubt:

    (1)    during the conspiracy a conspirator committed the additional crime charged to further the conspiracy's purpose;

    (2)    the Defendant was a knowing and willful member of the conspiracy when the crime was committed; and

    (3)    it was reasonably foreseeable that a coconspirator would commit the crime as a consequence of the conspiracy.

It's possible to prove the Defendant guilty of a crime even without evidence that the Defendant personally performed every act charged.

Ordinarily, any act a person can do may be done by directing another person, or "agent." Or it may be done by acting with or under the direction of others.

A Defendant "aids and abets" a person if the Defendant intentionally joins with the person to commit a crime.

A Defendant is criminally responsible for the acts of another person if the Defendant aids and abets the other person. A Defendant is also responsible if the Defendant willfully directs or authorizes the acts of an agent, employee, or other associate.

But finding that a Defendant is criminally responsible for the acts of another person requires proof that the Defendant intentionally associated with or participated in the crime – not just proof that the Defendant was simply present at the scene of a crime or knew about it.

In other words, you must find beyond a reasonable doubt that the Defendant was a willful participant and not merely a knowing spectator.

If a Defendant's knowledge of a fact is an essential part of a crime, it's enough that the Defendant was aware of a high probability that the fact existed -- unless the Defendant actually believed the fact didn't exist.

"Good faith" is a complete defense to a charge that requires intent to defraud. A defendant isn't required to prove good faith. The Government must prove intent to defraud beyond a reasonable doubt.

An honestly held opinion or an honestly formed belief cannot be fraudulent intent – even if the opinion or belief is mistaken. Similarly, evidence of a mistake in judgment, an error in management, or carelessness can't establish fraudulent intent.

But an honest belief that a business venture would ultimately succeed doesn't constitute good faith if the Defendant intended to deceive others by making representations the Defendant knew to be false or fraudulent.

You'll see that the indictment charges that a crime was committed "on or about" a certain date. The Government doesn't have to prove that the crime occurred on an exact date. The Government only has to prove beyond a reasonable doubt that the crime was committed on a date reasonably close to the date alleged.

The word "knowingly" means that an act was done voluntarily and intentionally and not because of a mistake or by accident.

The word "willfully" means that the act was committed voluntarily and purposely, with the intent to do something the law forbids; that is, with the bad purpose to disobey or disregard the law. While a person must have acted with the intent to do something the law forbids before you can find that the person acted "willfully," the person need not be aware of the specific law or rule that his conduct may be violating.

Each count of the indictment charges a separate crime. You must consider each crime and the evidence relating to it separately. If you find the Defendant guilty or not guilty of one crime, that must not affect your verdict for any other crime.

I caution you that the Defendant is on trial only for the specific crimes charged in the indictment. You're here to determine from the evidence in this case whether the Defendant is guilty or not guilty of those specific crimes.

You must never consider punishment in any way to decide whether the Defendant is guilty. If you find the Defendant guilty, the punishment is for the Judge alone to decide later.

Your verdict, whether guilty or not guilty, must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and will speak for you in court.

A verdict form has been prepared for your convenience.

[Explain verdict]

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it, date it, and carry it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the marshal. The marshal will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. But I caution you not to tell me how many jurors have voted one way or the other at that time.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. <u>10-14096-CR-MARTINEZ/LYNCH</u>

18 U.S.C. § 1349
18 U.S.C. § 1343
18 U.S.C. § 1341

UNITED STATES OF AMERICA,

vs.

RAVINDRANAUTH ROOPNARINE,
  a/k/a Ravi Roopnarine,

          Defendant.
_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At times relevant to this Indictment:

1.   *Century Star Realty Group,* was a Florida corporation, doing business in Florida, with offices located in Orlando, Florida.  Listed officers for *Century Star Realty Group* included GERGAWATTIE SEECHARAN.

2.   *The Law Offices of Marie C. Capita-Alezi, P.A.,* was a professional association doing business in the State of Florida as a real estate settlement agent and title agent.  Its principal offices were located in Hollywood, Florida.

1

3.   *Caribe Isle, LLC,* was a Florida corporation with principal address at 11755 SW 90 Street, Miami, Florida.

4.   *First Tennessee Bank, N.A.,* was financial institution insured by the Federal Deposit Insurance Corporation, doing business in the State of Florida.

5.   *First Horizon Home Loans,* was a subsidiary division of *First Tennessee Bank, N.A.,* doing business, among other places, in Florida.

6.   *Nationwide Lending Solutions Inc.,* was a mortgage lender with a principal address in Jacksonville, Florida.

7.   *Pyramid Title and Escrow, Inc.,* was a Florida corporation doing business as a real estate settlement agent and title agent, with a principal address in Jacksonville, Florida.

8.   *BNC Mortgage, Inc.,* was a mortgage lender doing business in the State of Florida, with a principal address in Irvine, California.

9.   *Bank United,* was a financial institution insured by the Federal Deposit Insurance Corporation, doing business in the State of Florida.

10.   *Countrywide Bank, FSB,* was a financial institution insured by the Federal Deposit Insurance Corporation, doing business in the State of Florida.

11.   *Washington Mutual Bank, FA,* was financial institution insured by the Federal Deposit Insurance Corporation, doing business in the State of Florida.

12.   *Florida Lakes Title & Closing, LLC,* was a Florida corporation, doing business as a real estate settlement agent and title agent, with offices located in Clermont, Florida.   Principal officer of *Florida Lakes Title & Closing* was LINDA ROVETTO.

13.   *Sunrise New Homes, Inc.,* was a Florida corporation, with offices located in Kissimmee, Florida.   Listed officers for *Sunrise New Homes, Inc.,* included RAVINDRANAUTH ROOPNARINE and BHARDWAAJ SEECHARAN.

14.   *Florida Capital Bank, N.A.,* was a financial institution insured by the Federal Deposit Insurance Corporation, doing business in the State of Florida.

15.   *Raviworld New Homes, Inc.,* was a Florida corporation, with a principal place of business in Homestead, Florida.   Listed officers for *Raviworld New Homes, Inc.,* included RAVINDRANAUTH ROOPNARINE and BHARDWAAJ SEECHARAN.

16.   *Ascendant Title Services, Inc.,* was a Florida corporation doing business as a real estate settlement agent and title agent, with a principal address in Sunrise, Florida.

17. *J&J Building and Development, LC., (sic)*, was a developer of residential properties in Florida, with a principal address in Oakland, Florida.

18. *JP Morgan Chase,* was a financial institution insured by the Federal Deposit Insurance Corporation, doing business in the State of Florida.

## COUNT ONE

### Conspiracy to Commit Wire Fraud and Mail Fraud
### 18 U.S.C. § 1349

19. Paragraphs 1 through 18 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

20. Beginning on or about April 1, 2006, and continuing through on or about January 11, 2009, the exact dates being unknown, in Indian River County and Miami-Dade County, in the Southern District of Florida, and elsewhere, the Defendant,

**RAVINDRANAUTH ROOPNARINE,**
**a/k/a Ravi Roopnarine,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with persons, known and unknown to the Grand Jury, to commit an offense against the United States, that is:

  a.   To knowingly and with intent to defraud, devise, and intend to devise, a scheme and artifice to defraud and to obtain money and

4

property by means of materially false and
fraudulent pretenses, representations, and
promises, knowing that they were false and
fraudulent when made, and knowingly transmit
and cause to be transmitted by means of wire
communication in interstate commerce any
writings, signs, signals, pictures, and sounds
for the purpose of executing the scheme and
artifice, in violation of Title 18, United
States Code, Section 1343, and,

b.   To knowingly and with intent to defraud,
devise, and intend to devise, a scheme and
artifice to defraud and to obtain money and
property by means of materially false and
fraudulent pretenses, representations, and
promises, knowing that they were false and
fraudulent when made, and knowingly transmit
and cause to be transmitted by means of the
United States Postal Service or a private or
commercial interstate carrier, some matter or
thing for the purpose of executing the scheme
and artifice, in violation of Title 18, United
States Code, Section 1341.

## Object of the Conspiracy

21.   It was an object of the conspiracy for the Defendant and

conspirators to unlawfully enrich themselves by, among other

things:

a.   finding residential properties that were available
for purchase and recruiting straw borrowers to
participate in the sale and resale of the
properties;

b.   submitting false and fraudulent loan applications,
and related documents, to banks and other lending
institutions, thereby inducing the lending
institutions to make loans to straw borrowers;

c.   concealing the submissions of false and fraudulent
     loan applications and documents and the receipt and
     transfer of fraud proceeds;  and,

d.   diverting fraud proceeds for their personal use and
     benefit, and to further the fraud scheme.

### The Manner and Means of the Conspiracy

The  manner  and  means  by  which  the  Defendant  and
conspirators sought to accomplish the objects and purpose of the
conspiracy included, among other things, the following:

22.  Conspirators would identify real estate properties and
homes (subject homes) in the Southern District of Florida and
elsewhere for sale by distressed owner/sellers.  During the course
of the conspiracy, conspirators identified and transacted sales for
approximately 200 homes in total.

23.  Named Defendant, and others, would identify and recruit
persons (straw buyers) who would lend their names and credit
histories for use in application to mortgage lenders for financing
to purchase the subject homes.  Throughout the life of the
conspiracy, an amount in excess of $20 million in mortgage loan
funds were applied for and obtained from multiple and varied
mortgage lenders.

24.  Named Defendant, and others, would arrange for the
purchase of the subject homes at prices greater than the sellers'
original asking prices.  The applications would thereby request and

obtain excess moneys for the inflated purchase price.  The mortgage lenders would typically send the money by wire transfer for settlement and disbursement at closing.  The additional amounts over the true sale price, were then paid to conspirators and their controlled business entities as referral fees or other costs at closing.

25.  Named Defendant, and others, would supply monies to the straw buyers or to the title agents, for use at closing as purported cash from the named borrowers as down payments at closing, in fraudulent deception of the mortgage lenders, and contrary to the stated intent of the borrower on the relevant loan applications.

26.  The Clerk's Office of the County in which the real property was sold, would typically send the mortgage lender or its designee a certified copy of the recorded mortgage deed, by U.S. mail or by private or commercial carrier, after recordation of the mortgage and sale.

27.  Named Defendant, and others, would pay the straw buyers approximately $10,000 per home purchased, in return for the use of their information and credit histories.  Straw buyers also received approximately $5,000 for each referral of another new straw buyer to the conspirators.  Most straw buyers did not take possession or reside in the homes bought in this scheme, but Named Defendant,

and others, would rent the purchased homes to tenants. Named Defendant, and others, would use the rents obtained thereby to perpetuate the ongoing scheme in the purchase and maintenance of homes by the conspirators.

All in violation of Title 18, United States Code, Section 1349.

## COUNT THREE

### Wire Fraud
### 18 U.S.C. § 1343

28. The allegations of paragraphs 1 through 18, and paragraphs 21 through 27 of this Indictment are re-alleged and incorporated herein by reference.

### THE SCHEME AND ARTIFICE

29. Beginning on or about April 1, 2006, and continuing through on or about January 19, 2009, exact dates being unknown to the Grand Jury, in the Southern District of Florida, and elsewhere, the Defendants, RAVINDRANAUTH ROOPNARINE, LINDA ROVETTO, BHARDWAAJ SEECHARAN, and GERGAWATTIE SEECHARAN, knowingly devised, and intended to devise, a scheme and artifice for obtaining money from mortgage lenders, by means of false and fraudulent pretenses, representations, and promises.

30. The scheme and artifice devised and executed by the Defendants consisted substantially of the following:

8

    a.    The Defendants sought to enrich themselves by causing each mortgage company to provide money in the form of a mortgage for the purchase of real property, by making false representations as to material facts in the mortgage applications for properties located in Vero Beach and Homestead, FL;

    b.    It was part of the scheme and artifice to defraud that the Defendants submitted, and caused to be submitted, during the mortgage lending process, among other things, fraudulent Uniform Residential Loan Applications, and Requests for Verification of Employment, as required by the lenders, to be furnished in the borrowers' name, through the mortgage broker to the lender for review and credit worthiness approval.

    c.    It was further part of the scheme and artifice to defraud that, under false and fraudulent pretenses, the Defendants owned and controlled properties in Florida.

    d.    These loans were submitted, and were caused to be submitted, to the mortgage lenders by the Defendants, and were false and fraudulent in some material fashion.

31.  Beginning from on or about April 1, 2006, and continuing through on or about January 11, 2009, the exact dates being unknown to the Grand Jury, in Indian River County, and Miami-Dade County in the Southern District of Florida, and elsewhere, for the purpose of executing the afore-said scheme and artifice to defraud, and for obtaining money by false and fraudulent pretenses, representations, and promises, the Defendant,

        **RAVINDRANAUTH ROOPNARINE,**
         **a/k/a Ravi Roopnarine,**

9

did knowingly cause to be delivered by wire, into the State of
Florida, mortgage loan funds for settlement and disbursements at
closing, as more particularly described below in Count:

| COUNT | DEFENDANT | APPROXIMATE DATE OF TRANSFER | PROPERTY LOCATION | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|---|
| THREE | R. Roopnarine | 10-12-07 | XXX NE 26th Place Unit 102 Homestead, FL | Transfer of $171,000 from *Washington Mutual Bank*, Stockton, CA to Florida Lakes Title & Closing, LLC, Escrow Account for disbursement to the seller Caribe Isle, LLC, in the Southern District of Florida. |

All in violation of Title 18, United States Code, Sections
1343 and 2.

## COUNT SIX

### Mail Fraud
### 18 U.S.C. § 1341

32. The allegations of paragraphs 1 through 18, and
paragraphs 21 through 27 of this Indictment are re-alleged and
incorporated herein by reference.

10

## THE SCHEME AND ARTIFICE

33.    Beginning from on or about April 1, 2006, and continuing through on or about January 19, 2009, exact dates being unknown to the Grand Jury, in the Southern District of Florida, and elsewhere, the Defendants, RAVINDRANAUTH ROOPNARINE, LINDA ROVETTO, BHARDWAAJ SEECHARAN, and GERGAWATTIE SEECHARAN, knowingly devised, and intended to devise, a scheme and artifice for obtaining money from mortgage lenders, by means of false and fraudulent pretenses, representations, and promises.

34.    The scheme and artifice devised and executed by Defendants consisted substantially of the following:

a.    The Defendants sought to enrich themselves by causing each mortgage company to provide money in the form of a mortgage for the purchase of real property, by making false representations as to material facts in the mortgage applications for properties located in Vero Beach and Homestead, FL;

b.    It was part of the scheme and artifice to defraud that the Defendants submitted, and caused to be submitted, during the mortgage lending process, among other things, fraudulent Uniform Residential Loan Applications, and Requests for Verification of Employment, as required by the lenders, to be furnished in the borrowers' name, through the mortgage broker to the lender for review and credit worthiness approval;

c.    It was further part of the scheme and artifice to defraud that, under false and fraudulent pretenses, the Defendants owned and controlled properties in Florida; and,

11

     d.     These loans were submitted, and were caused to be submitted, to the mortgage lenders by the Defendants, and were false and fraudulent in some material fashion.

35.  Beginning on or about April 1, 2006, and continuing through on or about January 11, 2009, the exact dates being unknown to the Grand Jury, in Indian River County, and Miami-Dade County in the Southern District of Florida, and elsewhere, for the purpose of executing the afore-said scheme and artifice to defraud, and for obtaining money by false and fraudulent pretenses, representations, and promises, the Defendant,

**RAVINDRANAUTH ROOPNARINE,**
**a/k/a Ravi Roopnarine,**

did knowingly cause to be delivered by the United States Postal Service, or by private or commercial interstate carrier according to the direction thereon, mail matter, as more particularly

described below:

| COUNT | APPROXIMATE DATE OF MAILING | PROPERTY LOCATION | DESCRIPTION OF MAILING |
|-------|------------------------------|---------------------|-------------------------|
| SIX | 10-12-07 | XX30 NE 4th Street Unit 205-Bldg 19 Homestead, FL | Miami-Dade County Clerk received from Ascendant Title Services, Inc., via U.P.S. a warranty deed and mortgage. |